**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-3259

———————

UNITED STATES OF AMERICA

v.

ROBERT J. PENNINGTON
a/k/a KILLA,
                    Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 08-cr-00137-001)
District Judge:  Honorable James Knoll Gardner

———————

Submitted Under Third Circuit LAR 34.1(a)
November 2, 2012

———————

Before: SLOVITER, AMBRO and BARRY, Circuit Judges

(Opinion Filed:  November 27, 2012)

———————

OPINION

———————

BARRY, Circuit Judge

Appellant Robert J. Pennington ("Pennington") was found guilty at trial of the

commission of multiple robberies affecting interstate commerce, in violation of the

Hobbs Act, 18 U.S.C. § 1951; the attempted commission of one other robbery; and multiple counts of using and carrying a gun during a crime of violence in violation of 18 U.S.C. § 924(c). He was sentenced to 158 years' (1,896 months') imprisonment, and timely appealed. We will affirm.

We write primarily for the parties and so we refer only to those facts relevant to the legal issues we address. The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the District Court's conclusions of law as to Pennington's *Brady* claim, and review any findings of fact for clear error. *See United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006). We review for abuse of discretion a district court's denial of a motion for a mistrial based on a witness's allegedly prejudicial testimony. *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005).

## I. Discussion

Pennington argues that the District Court erred by denying his two motions for a mistrial. His first motion was based on a claim that the government violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963); the second was based on a witness's reference to an uncharged crime.

### A.  The "*Brady* Violation"

Under *Brady v. Maryland*, it is a violation of due process for a prosecutor to

withhold favorable evidence from the defendant "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The prosecutor's affirmative duty to disclose evidence favorable to the defendant includes impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). "To establish a *Brady* violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *Risha*, 445 F.3d at 303 (citing *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005)).

Barry Hoster, a victim of one of the robberies, testified on direct examination that he was approached by two people, one with a gun, but could make no identification at the time. He added, on cross-examination, that shortly before trial, he had viewed a photo array that included Pennington's photo, but again was unable to identify anyone. The government did not offer Hoster as an identification witness and did not ask him to identify anyone at trial.

During cross-examination, this exchange occurred:

Q. Do you remember specifically telling any of the officers that – and I'm reading from a report and you can correct me if this is wrong, but they said that you told them that you "could possibly identify the actors if you saw them again." Do you remember that?

A. Yeah. I said that and – but it was very, very quick. I was stopped several times in the course of my route in the following weeks with photographs. I didn't recognize any in those lineups until two – two of the officers, or maybe they were FBI guys, came to my house and I recognized the one. I remember he was down in the right corner and they left and then the next morning those pictures were printed in the paper. And I said to my wife,

3

"Linda," I says, "that's the guy I picked out last night and it's as close as I can come to identifying who that was."

Q. Okay. Mr. Hoster, do you remember being shown on November 18th of this year by Agent Shelton a photo spread?

A. Yes.

Q. And you were unable to identify anyone after viewing that spread. Is that correct?

A. Those photographs did not look familiar to me at all.

App. 71.

Pennington moved for a mistrial following Hoster's testimony, arguing that the above exchange evidenced a *Brady* violation. The basis of that violation, Pennington argued, was that the government failed to inform him that FBI agents had shown Hoster a photo array before November 18, 2010, and that Hoster had identified him in that photo array. The government responded that Pennington could not establish a *Brady* violation, and represented that evidence of a photo array in which Hoster identified Pennington did not exist. Thus, the government argued, it had not withheld evidence of an identification, as Hoster had never identified Pennington or anyone else.

Pennington concedes that, aside from Hoster's gratuitous statement on cross-examination, there is no evidence that he previously identified Pennington or anyone else, and he has never taken issue with the government's representation. There was simply nothing to disclose, argued the government, and thus no *Brady* violation. The District Court agreed, denying the motion for a mistrial, but nonetheless, after briefly

4

summarizing the answer at issue, instructing the jury, in part, as follows:

> All of that part of the answer was unresponsive to the question and I am striking it from the record and instructing you to disregard that unresponsive part of the answer.
>
> I'm also directing you that Mr. Hosteder (sic) should not be considered as an identification witness in this case. Any evidence which is stricken is not in the record and is not before you and you may not consider it and so you have, because I have stricken that from the record, no information which would permit you to make a finding that he was an identification witness and you should not consider him as such.

*Id.* at 76-77.

The motion for a mistrial based on a purported *Brady* violation was properly denied.

**B. Uncharged Crime Reference**

Pennington's second issue on appeal involves the testimony of Autumn Yerger, the girlfriend of Gerardo Gonsales, Pennington's co-defendant who pled guilty and testified against Pennington at trial. Pennington argues that the District Court erred in not granting him a mistrial after Yerger, in the course of her testimony, mentioned that Pennington participated in the robbery of a Chinese restaurant delivery person, an uncharged crime.

Yerger testified, on direct examination, that one day in December 2007, she overheard a conversation between Gonsales and Pennington in which they discussed "wanting to get some money." *Id.* at 111-112. Over the course of the following several weeks, she overheard two further conversations between Pennington and Gonsales

5

concerning the robberies of two delivery trucks. A week after the last conversation, Gonsales told her that he and Pennington had committed a third robbery of a delivery truck.

After testifying about the conversations with reference to the three delivery truck robberies, the following exchange occurred:

Q. And was there another conversation after that one?

A. I remember their conversation being about a Chinese food delivery.

Q. What happened?

A. Mr. Gonsales told me that he had ordered food and when the delivery man came they robbed him.

*Id.* at 116. Yerger did not expand upon this testimony, and there was no further mention of this alleged robbery.

Yerger was thereafter effectively cross-examined and impeached. Among other subjects, she was confronted with her grand jury testimony that she had overheard or participated in only two conversations concerning the truck robberies as opposed to the four she testified to at trial. No questions were asked about any robbery of a deliveryman for a Chinese restaurant.

At the conclusion of Yerger's testimony, Pennington moved for a mistrial, stating:

The basis of my motion for a mistrial is that Ms. Yerger testified about a robbery of a Chinese delivery man that Mr. Pennington allegedly was involved in. We litigated the 404(b) motion pre-trial and that was never part of it. I mean, she sprung that and it's evidence of other crimes, it's prejudicial and that's the basis of my motion.

6

*Id.* at 117. The government responded that it had been taken by surprise by Yerger's mention of that robbery. It admitted that it had investigated the robbery early on, but no case had developed as a result, and it was "not intending in any way, shape or form to accuse this defendant for [sic] committing an uncharged robbery." Supp. App. at 137.

The District Court denied Pennington's motion. It found the government's representation that it had been surprised by Yerger's comment to be credible; that her mention of the alleged uncharged robbery involved "one brief sentence;" that there was no mention by any of the government's sixteen previous witnesses of the uncharged robbery; and that "there [was] no likelihood, much less a strong likelihood that the effect of that sentence would be . . . 'devastating' to the defendant." *Id.* at 150. The District Court struck Yerger's comment from the record, and instructed the jury as follows:

> I have stricken from the record the evidence concerning the robbery of the Chinese food deliveryman, and I am instructing you to disregard it. It is not part of the evidence for you to consider in deciding this matter, and you should disregard it and give it no consideration or weight whatsoever in your – or mention in your deliberations.

*Id.* at 153-54.

Pennington argues that the District Court erred in failing to grant his motion for a mistrial. We disagree. For the reasons stated by the District Court, the motion for a mistrial was properly denied.

## II. Conclusion

The judgment of the District Court will be affirmed.